IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

In re: **ALFREDO F. MADEAM, JR.,** aka : **Chapter 13**
Alfredo Fernando Madeam, Jr., aka : Case No. **5:22-bk-01575**
Alfredo Madeam, :
      Debtor, :

## BRIEF IN SUPPORT OF DUAL BANKRUPTCY CASES[1]

**I.    STATEMENT OF FACTS**

Debtor **ALFREDO F. MADEAM, JR.,** and his wife filed a joint Chapter 13 Bankruptcy Case No. 5:18-bk-03062 on July 25, 2018 ("the Prior Case"). In that case, their residence at 902 Thornberry Court, East Stroudsburg, PA ("902 Thornberry"), was effectively abandoned as an asset of that Estate. See, e.g., Docket Entry 78-2, at 4, in the Prior Case (the Sixth Amended Chapter 13 Plan in that case.) For all practical purposes, 902 Thornberry Court, East Stroudsburg, PA, is not an asset of the of the Estate of the Prior Case. Subsequent to filing the Prior Case, Debtor and his wife purchased their residence at 404 Benson Court, East Stroudsburg, PA, with assets that were not property of the Estate of the Prior Case, to wit, the pension of Debtor's wife. See 11 U.S.C. § 541(c)(2). 404 Benson Court, East Stroudsburg, PA ("404 Benson"), is not an asset of the Estate of the Prior Case. All other assets that might potentially be assets of either case are entirely exempt. See Docket Entry 16 at 1-16 (Schedules A/B, C and D in the above-captioned Chapter 13 Bankruptcy Case). Even with regard to income, the prepetition payment of attorneys' fees and the intended payments to the Trustee in the Instant Case were, or were to be, derived from rental income from 902 Thornberry Court, East Stroudsburg, PA. Debtor anticipated payment in full of the Plan in the Prior Case by July 31,

---

[1] Debtor also intends to address the Trustee's Motion to Dismiss filed on January 12, 2023.

2023, prior to committing any other income to the Plan in the Instant Case. As such, effectively, as far as assets are concerned, there are two entirely different bankruptcy estates.

Debtor filed the above-captioned Chapter 13 Bankruptcy Case ("the Instant Case") on August 24, 2022. The primary reason for filing the Instant Case was an imminent tax sale of 404 Benson. The secondary basis for filing the Instant Case was to satisfy income tax liabilities incurring subsequent to the filing of the Prior Case. While 902 Thornberry, was subject to an ongoing foreclosure proceeding, Sheriff's Sales had been continued repeatedly due to a pending loan modification application that has since become a trial loan modification agreement.

**II.    ISSUES PRESENTED**

    **A.**    Did Debtor file the Instant Case in Good Faith?

Suggested Answer: Yes.  Debtor was not seeking to avoid the prohibition of 11 U.S.C. § 109(g), or seeking to relitigate issues resolved in the Prior Case.

    **B.**    Are there effectively two separate bankruptcy estates?

Suggested Answer: Yes.  There are no non-exempt assets in the Instant Case that are assets of the Prior Case.

    **C.**    Are there effectively two separate sets of claims?

Suggested Answer: Yes.  While not reflected in the Proof of Claims, after entry of Discharge in in the Prior Case, the Claim in the Instant Case will be entirely claims that arose after the filing of the Prior Case.

## III. ARGUMENT

### A. Debtor filed the Instant Case in Good Faith.

The Supreme Court allowed dual bankruptcy cases in 1925. *Freshman v. Atkins,* 269 U.S. 121, at 122, 46 S.Ct. 41, 70 L.Ed. 193 (1925). The debtor in that case received a Discharge of the debts in their second case, but did not receive a Discharge of the debts that remained from their first case because the bankruptcy referee had filed a recommendation against a Discharge in the first case. *Id.,* 269 U.S. at 122. That Supreme Court holding, which allowed the second case a Discharge, involved an inquiry into the good faith of dual bankruptcy cases that appears to be accepted case law today. See, e.g., *In re Swigert,* 601 B.R. 913, 918-19 (Bankr.M.D.Pa. 2019). In *Swigert*, the Court's focus was on whether the second of the bankruptcy cases was in bad faith as intended to avoid the consequences of 11 U.S.C. § 109(g). The Court determined that section 109(g) disqualified individuals from bankruptcy if the new filing was linked to avoiding the consequences of a motion for relief from the automatic stay in a prior case, and was not to be applied absent such a link. *Id.,* at 922-23. Concluding that to be the case, the Court dismissed to second case of *Swigert*. *Id.,* at 927. Debtor's case does not implicate section 109(g) in the same way. Debtor filed the Instant Case due to a tax sale of his current residence, which was and is not property of the Estate of the Prior Case. Debtor also seeks to address debts that arose *after* the filing of the Prior Case. Debtor does not seek to relitigate any issues in the Prior Case, which has a Confirmed Plan that Debtor seeks to complete.[2] Debtor's Plan in the Instant Case concedes that retention of 902 Thornberry is based upon a loan modification, not upon revisiting any issue from the Prior Case. Neither the type of issue involved in *Freshman v. Atkins* nor the type of issue involved in *Swigert* is present in this case, which should resolve the threshold issue.

---

[2] Debtor's wife continues to seek new employment to enable completion of the Plan in the Prior Case within the original sixty-month limit, including doing volunteer work with a potential employer.

3

### B. There are effectively two separate bankruptcy estates.

The second issue that can cause dual bankruptcy cases to fail is an attempt of the second case to interfere with the administration of the assets in the first case. In addition to *Swigert,* two other Pennsylvania case dealt with this issue. The United States Bankruptcy Court for the Western District of Pennsylvania examined the issue of a debtor filing a Chapter 13 Case to save his residence, which a Chapter 7 Trustee was going to sell pursuant to a carve-out agreement in a 2014 Chapter 11 Case that was converted to Chapter 7 in 2015. *In re Chain,* 558 B.R. 750, 751-52 (Bankr.W.D.Pa. 2016). The Court approvingly reviewed a 1999 opinion of the United States Bankruptcy Court for the Western District of Missouri, which held that a Chapter 13 Case was filed in good faith and could go forward *despite* interfering with the administration of a pending Chapter 7 case that preceded it, because the debtors filed the Chapter 13 Case with a plan that paid the Chapter 7 Trustee the value of motor vehicle subject to a lien the Chapter 7 Trustee had avoided. *In re Chain,* at 755(citing *In re Cowan,* 235 B.R. 912 (Bankr.W.D.Mo. 1999). The *Cowan* Court noted:

> It bears repeating that the Court in *Atkins* dismissed neither the debtor\'s second petition nor his second application for a discharge. In fact, the Court affirmed the district court\'s decision to discharge all those debts listed in the second application which had been incurred after the debtor had filed his first voluntary petition.

*In re Cowan,* 235 B.R. at 917(quoting *In re Bullock,* 206 B.R. 389, 392-93 (Bankr.E.D.Va. 1997)).

The *Cowan* Court identified five "tests" to consider:

1. The proximity in time of the chapter 13 filing to the chapter 7 filing.
2. Whether the debtor has incurred some change in circumstance between the filings that suggests a second filing was appropriate and that the debtor will be able to comply with the terms of a chapter 13 plan.
3. Whether the two filings accomplish a result that is not permitted in either chapter standing alone.

4

4. Whether the two filings treat creditors in a fundamentally fair and equitable manner or whether they are rather an attempt to manipulate the bankruptcy system or are an abuse of the purpose and spirit of the Bankruptcy Code.

*In re Cowan,* 235 B.R. at 919(quoting *In re Cushman,* 217 B.R. 470, 477 (Bankr.E.D.Va. 1998)). The fifth test was "the functional effect of the two petitions considered together." The *Chain* Court distinguished *Cowan*, noting that 1) "Chain failed to act promptly to salvage properties from liquidation;" 2) Chain's chapter 13 plan proposes direct payment to creditors in the chapter 7 estate, bypassing the chapter 7 trustee altogether;" 3) Chain neither opposed the Carve-Out Agreement nor sought relief from the *Carve-Out Order*;" and 4) there was "no advantage to bifurcating the assets among the two bankruptcy estates . . . [b]ecause some of the properties are cross-collateralized." *In re Chain,* at 755-57. Similarly to *Chain*, this Court, via Chief Bankruptcy Judge France, held that a subsequent Chapter 13 filed to satisfy an amount due to the Chapter 7 Trustee in a prior Chapter 7 case could not go forward because a "the second case [can only] go forward when it does not interfere with the administration of the first case" and "the Chapter 13 case is not addressing assets and debts different from those in the Chapter 7 case." *In re Mannucci,* at 5-6 (Bankr.M.D.Pa. July 27, 2013).

The only issue truly remaining in the Prior Case is the completion of Plan payments. There are no non-exempts assets in the Prior Case. The only non-exempt asset in the Instant Case is 404 Benson, which was purchased with assets that were not property of the estate of the Prior Case. In summary, assets do provide a basis for dismissal of the Instant Case.

C.  **There are effectively two separate sets of claims.**

The Claims in the Instant Case will consist solely of claims that arose after the Prior Case was filed once Debtor receives a Discharge in the Prior Case. While that Discharge remains contingent, there is no serious risk of confusion of the debts incurred prior to the July 25, 2018, filing of the Prior Case and those incurred subsequent to that date.

D.  **Should the Instant Case be Dismissed?**

There appears to be little basis to dismiss the Instant Case. An absolute prohibition on dual bankruptcy cases is contrary to the controlling holding of the United States Supreme Court. See, e.g., *In re Cowan,* 235 B.R. at 917(quoting *In re Bullock,* 206 B.R. 389, 392-93 (Bankr.E.D.Va. 1997)(discussing *Freshman v. Atkins,* infra). The Instant Case does not implicate section 109(g). The Prior Case has no non-exempt assets. The only non-exempt asset in the instant case was acquired with property that was not property of the Estate of the Prior Case. The Chapter 13 Plan in the instant case is funded solely with rental income from 902 Thornberry until payments in the Prior Case are complete, which Debtor reasonably anticipated would be in July of 2023. The two filings do not seek to obtain a goal that is not permitted in either filing. The two filings treat creditors in a fundamentally fair and equitable manner and are not an attempt to manipulate the bankruptcy system or abuse of the purpose and/or spirit of the Bankruptcy Code. The functional effect of the two petitions together is not inappropriate: one deals with claims arising prior to July 25, 2018, and the other seeks to deal with claims arising since July 25, 2018. Notably, the only creditor potentially implicating section 109(g) has not been adversely affected, as Debtor is in a trial loan modification with the holder of the mortgage against 902 Thornberry.

However, there is difference between "little basis" and no basis at all. While the *Cowan* holding indicates that some interference with the administration of the first of dual bankruptcy cases is acceptable, in that the Chapter 7 Trustee would have to await payment via a Chapter 13 Plan, other courts have been concerned about potential confusion for creditors and sorting what assets are property of which estate. See, e.g., *In re Mannucci,* at 6; and *In re Chain,* at 756-57. While the difference between "before July 25, 2018" and "after July 25, 2018" seems stark and simple, creditors have filed claims that arose, at least in part, and in some instances entirely, before July 25, 2018. Given that there is no Discharge in the Prior Case, such claims seem appropriate under the letter of the law. Debtor's employer appears to have sent funds that should have been paid into the Prior Case to the Trustee with the case number of the Instant Case. Neither the Internal Revenue Service nor the Pennsylvania Department of Revenue appear to accept the treatment of claims arising before July 25, 2018, in the Prior Case, and treatment solely of the claims that arose after July 25, 2018, in the Instant Case. Another significant concern is that the aforementioned trial loan modification has monthly payments that eliminate the gap between the potential income from 902 Thornberry and that monthly payment, which was the only source of Plan funding for the Instant Case until the Plan in the Prior Case was complete. While it is not inappropriate to have a Chapter 13 Case with tiered payments, the lack of income to fund the Instant Case other than at the expense of the Prior Case is an issue. Additionally, Debtor filed the Instant Case with the expectation that his wife would have employment by this point in time. Debtor does not want the Instant Case to jeopardize the successful completion of the Prior Case. For these reasons, Debtor would accept an Order Dismissing the Instant Case if it was without a finding that it was filed "not in good faith," without prejudice to future filings after the Plan payments in the Prior Case are complete, and in

7

conjunction with an Order that all funds paid to the Trustee in the instant case be transferred to the Prior Case and subject to only one Trustee commission

## IV. CONCLUSION

For these reasons, Debtor **ALFREDO F. MADEAM, JR.,** prays this Honorable Court for an Order that the dual bankruptcy case are not inappropriate and that the Instant Case not be Dismissed, or, in the alternative, that it be Dismissed without a finding that it was filed "not in good faith," Dismissed without prejudice, and in conjunction with an Order that all funds paid to the Trustee in the instant case be transferred to the Prior Case and subject to only one Trustee commission, and for such other and further relief as the Honorable Court deems just and appropriate.

Respectfully submitted,

/s/ J. Zac Christman
**J. ZAC CHRISTMAN, ESQUIRE**
Attorney for Debtor(s)
556 Main Street, Suite 12
Stroudsburg, PA 18360
(570) 234-3960, fax (570) 234-3975
zac@fisherchristman.com